**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 26 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YAINE REYNA SANCHEZ, | No.   20-71034 |
| Petitioner, | Agency No. A203-699-600 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 21, 2023
San Francisco, California

Before: GOULD, NGUYEN, and BENNETT, Circuit Judges.
Partial Dissent by Judge BENNETT.

Yaine Reyna Sanchez, a native and citizen of Cuba, petitions for review of a

Board of Immigration Appeals ("BIA") decision dismissing her appeal from a

decision by an immigration judge ("IJ") denying her applications for asylum,

withholding of removal, and protection under the Convention Against Torture

("CAT").  We grant the petition in part and deny it in part.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1. Reyna Sanchez properly exhausted her claims before the BIA. "[O]ur precedent is quite clear that claims addressed on the merits by the BIA are exhausted." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 874 (9th Cir. 2008). The BIA addressed the merits of Reyna Sanchez's claims, demonstrating that it was "on notice" of them and had an "adequate opportunity" to pass on them. *Diaz-Jimenez v. Sessions*, 902 F.3d 955, 959–60 (9th Cir. 2018).

2. We have jurisdiction under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA adopts the IJ's decision and adds its own reasoning, we review both the BIA and IJ decisions. *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1027–28 (9th Cir. 2019). The BIA affirmed the IJ's denial of Reyna Sanchez's application for asylum because she did not establish: (1) she suffered harm rising to the level of persecution; and (2) a well-founded fear of future persecution on account of a protected ground (i.e., a showing of "nexus"). We review for substantial evidence both the past persecution and nexus determinations. *Antonio v. Garland*, 58 F.4th 1067, 1072 (9th Cir. 2023); *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023). Under the substantial evidence standard, we must accept the agency's findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Antonio*, 58 F.4th at 1072–73 (quoting *Garland v. Dai*, 141 S. Ct. 1669, 1677 (2021)).

3. Any reasonable adjudicator would be compelled to conclude that the harm Reyna Sanchez suffered constitutes past persecution. Reyna Sanchez credibly

2

testified that the Cuban police beat her until she was unconscious, detained her for 24 hours, detained her again for 72 hours (this time denying her water), and made numerous threats of death and imprisonment.

We have held that beating someone until they are unconscious is "clearly sufficient" to show past persecution. *Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (cleaned up). Deprivation of food or water contributes to a finding of past persecution. *See Tarubac v. INS*, 182 F.3d 1114, 1117, 1118 n.2 (9th Cir. 1999). When threats—and in particular, *death* threats—occur "in conjunction with other forms of abuse," this "require[s] a finding of past persecution." *Smolniakova v. Gonzales*, 422 F.3d 1037, 1049 (9th Cir. 2005); *see also Aden v. Wilkinson*, 989 F.3d 1073, 1082 (9th Cir. 2021) (holding that "physical harm *plus something more*, such as credible death threats" compels a finding of past persecution). The "key question is whether, looking at the *cumulative effect of all the incidents* that a Petitioner has suffered, the treatment [s]he received rises to the level of persecution." *Sharma v. Garland*, 9 F.4th 1052, 1061 (9th Cir. 2021) (emphasis added) (quoting *Gormley v. Ashcroft*, 364 F.3d 1172, 1176–77 (9th Cir. 2004)). We conclude that the BIA and IJ's conclusion that the cumulative harm Reyna Sanchez suffered does not rise to the level of past persecution is not supported by substantial evidence. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1134 (9th Cir. 2004) (holding that "physical abuse . . . combined with other incidents, such as detention and threats," compels a

3

finding of persecution).

4. Any reasonable adjudicator would also be compelled to conclude that the Cuban police persecuted Reyna Sanchez on account of her political opinion. A petitioner's credible testimony about a "persecutor's statements about motive is direct evidence that the applicant's political opinion motivated the persecution." *Khudaverdyan v. Holder*, 778 F.3d 1101, 1106–07 (9th Cir. 2015). Here, Cuban police officers made several statements supporting nexus: (1) three days after Reyna Sanchez was arrested, police officers came to her restaurant to fine her for being "against the government"; (2) when Reyna Sanchez was detained for a second time and denied water, the officers told her "this [is] what we have for traitors"; and (3) an officer told Reyna Sanchez that if she "did not change the way that [she] thought," she would be imprisoned for 15 or more years. *See Singh v. Holder*, 764 F.3d 1153, 1159–63 (9th Cir. 2014) (holding that petitioner's credible testimony that police officers called him a "traitor" and accused him of "working against the government" compelled a finding of nexus). The denial of the applications for asylum and withholding of removal cannot stand. The record compels the finding that Reyna Sanchez suffered past persecution.

The dissent erroneously "gives conclusive weight to any piece of testimony that cuts [in favor of] the agency's finding." *Dai*, 141 S. Ct. at 1678; *see* Dissent at 5. That is not the correct standard. We look at the full record to decide if a

4

reasonable adjudicator could have found that there was no nexus between the severe harm suffered by Reyna Sanchez and her publicly expressed anti-Castro political opinion. *De Leon Lopez v. Garland*, 51 F.4th 992, 999 (9th Cir. 2022). The dissent reads the word "reasonable" out of the "reasonable adjudicator" standard for substantial evidence. Our determination that the basis for the IJ's factual findings is "insufficient or illogical," *id.* at 1000, does not amount to an improper "reweighing of the evidence," *id.* at 1012 (Collins, J., dissenting). *See* Dissent at 3–4. In determining the Cuban officers' motive, no reasonable fact finder could give more weight to Reyna Sanchez's isolated statement—which she later disavowed—than to powerful circumstantial evidence relevant to a nexus finding.[1] *See Garcia v. Wilkinson*, 988 F.3d 1136, 1145 (9th Cir. 2021); *Aden*, 989 F.3d at 1084 ("The motive may also be inferred if the factual circumstances alone demonstrate 'no other logical reason for the persecution at issue.'" (quoting *Navas v. INS*, 217 F.3d 646, 657 (9th Cir. 2000))). Contrary to our precedent, the dissent discounts circumstantial evidence as being less probative of motive than a statement made not by the Cuban officers themselves, but by Reyna Sanchez. Dissent at 6–7. Moreover, even if the

---

[1] The other facts to which the dissent points similarly could not convince a reasonable adjudicator to find a lack of nexus. Although Sanchez was able to travel to and from Cuba, the police were waiting for her the day she returned from Guyana. And that Sanchez ceased her protests *supports* a finding of nexus. *See Aden*, 989 F.3d at 1083 (it is significant for past persecution if a threat leaves an individual with "no realistic choice but to . . . forsake other political or religious beliefs, or flee.").

Cuban police beat Reyna Sanchez in part because she sold food without a permit, "it is well established that mixed motives do not negate a legitimate nexus to political opinion." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). The severe beating, multiple instances of prolonged detainment, and death threats Reyna Sanchez suffered cannot reasonably be explained by her prior sale of food without a permit given the timing of the persecution, her persecutor's statements, and the country conditions reported showing repression of anti-Castro sentiments.

5. We review for substantial evidence the BIA and IJ's determinations regarding CAT protection. *Guo v. Sessions*, 897 F.3d 1208, 1212 (9th Cir. 2018). "Torture" that evokes CAT protection is a concept "more severe than persecution." *Id.* at 1217 (quoting *Nuru v. Gonzales*, 404 F.3d 1207, 1224 (9th Cir. 2005)). We conclude that the record does not compel a finding of "torture" for CAT protection.[2] *Cf. e.g.*, *Nguyen v. Holder*, 763 F.3d 1022, 1031 (9th Cir. 2014) (finding that being beaten and left permanently disabled or being deprived of food and water to the point of watching a fellow prisoner starve to death constitutes torture).

6. Because Reyna Sanchez has demonstrated past persecution by government forces on account of her political opinion, she is entitled to a presumption of future

---

[2] We also conclude that, contrary to petitioner's argument, the BIA considered "highly probative or potentially dispositive evidence." *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011). The BIA relied upon the IJ's 16-page decision, which noted that Reyna Sanchez was "arrested, beaten, and threatened" and considered "the country conditions evidence in the record."

persecution for her asylum and withholding of removal claims. *Guo*, 897 F.3d at 1217; 8 C.F.R. § 1208.16(b)(1). We grant the petition in part as to Reyna Sanchez's asylum and withholding of removal claims and remand this case to the BIA to determine in the first instance whether the government can rebut this presumption. We deny the petition in part as to Reyna Sanchez's CAT claim.

**PETITION GRANTED IN PART AND DENIED IN PART.**

*Yaine Reyna Sanchez v. Merrick B. Garland*, No. 20-71034



BENNETT, Circuit Judge, dissenting in part:

We review "for substantial evidence the [agency's] determination that a petitioner has failed to establish eligibility for asylum." *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021). We must accept findings from the Agency "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). Because the record would not compel a reasonable adjudicator to conclude that the harm Reyna Sanchez suffered was on account of her alleged political activity, I respectfully dissent, in part.[1]

A petitioner seeking asylum must show that the persecution she endured was "on account of" a statutorily protected ground. *Parussimova v. Mukasey*, 555 F.3d 734, 738-39 (9th Cir. 2009). To meet this "nexus" requirement, an applicant must show that the protected ground was "at least one central reason" why the applicant was persecuted. 8 U.S.C. § 1158(b)(1)(B)(i). "[A] motive is a 'central reason' if the persecutor would not have harmed the applicant if such motive did not exist."

---

[1] I agree with the majority's rejection of Reyna Sanchez's CAT claim.

1

*Parussimova*, 555 F.3d at 741. In asylum cases, the "critical" issue is the persecutor's motive. *Singh v. Barr*, 935 F.3d 822, 826 (9th Cir. 2019).

The sworn statement Reyna Sanchez gave to Border Patrol agents makes clear that all the police beatings she claims she suffered were not a result of her political activity, but due to her selling food without a permit:

[Agent] Q. Would you be harmed in any way if you returned to Cuba?
[Reyna Sanchez] A. Yes.
Q. How would you be harmed if you returned to Cuba?
A. I will be jailed.
Q. Who will jail you in Cuba?
A. The Police.
Q. Why will the Police . . . jail you?
A. Because I am not in favor of the Cuban Government.
Q. Why you [sic] are not in favor of the Cuban Government?
A. Because the Government abuse the people.
Q. How [does] the Cuban Government abuse the people?
A. They abuse the power they have.
Q. Have you ever been a victim of any type of crime or violence in Cuba?
A. Yes.
*Q. Of what type of crime or violence have you been a victim in Cuba?*
*A. The police beat me several times.*
*Q. Why the police beat you several times?*
*A. Because I used to sell food without a permit.*
*Q. Why you used to sell food without a permit?*

2

*A. Because that is the only way to survive.*

(emphasis added).

Reyna Sanchez denied making the sworn statement that the government introduced in evidence. But as the IJ found, "[a]lthough [Reyna Sanchez] denies it, her sworn statement says she was arrested and attacked because she sold food without a permit."[2] The presence of Reyna Sanchez's sworn statement explicitly attributing the harm she endured to her selling food without a permit is sufficient evidence supporting the IJ's and Agency's conclusion.

The majority, modifying a quote from *Garland v. Ming Dai*, 141 S. Ct. 1669, 1678 (2021), claims this conclusion is "erroneous[]" because it "gives conclusive weight to any piece of testimony that cuts [in favor of] the agency's finding." Maj. at 4 (quoting *Garland v. Ming Dai*, 141 S. Ct. 1669, 1678 (2021) (second alteration by the majority)). But *Ming Dai* held that it was error to give "conclusive weight to any piece of testimony that *cuts against* the agency's finding." 141 S. Ct. at 1678 (emphasis added). I do no such thing. Instead, I adhere to the standard of review by accepting that the IJ and Agency reasonably gave substantial weight to Reyna Sanchez's sworn statement based on the record, and I do not reweigh the evidence. *See Don v. Gonzales*, 476 F.3d 738, 743 (9th Cir. 2007) (noting that the

---

[2] The Agency adopted the IJ's findings: "We also agree with the Immigration Judge that the respondent has not established that there is a clear probability of future persecution in Cuba on account [of] her political opinion or any imputed political opinion (IJ at 12-13)."

3

court cannot engage in "impermissible re-weighing of the evidence"); *Singh v. INS*, 134 F.3d 962, 969 n.14 (9th Cir. 1998) ("[W]e may not reweigh the evidence . . . . We merely determine whether the evidence *compels* such a conclusion."); *Kotasz v. INS*, 31 F.3d 847, 851 (9th Cir. 1994) ("This strict standard bars the reviewing court from independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown."); *see also Halim v. Holder*, 590 F.3d 971, 975 (9th Cir. 2009) ("[W]e must uphold the IJ's determination if it is supported by reasonable, substantial, and probative evidence in the record." (brackets in original) (citation omitted)); *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (same).

The majority provides a conclusory statement that its opinion does "not amount to an improper reweighing of the evidence," and then concludes that no reasonable fact finder could "give more weight to Reyna Sanchez's isolated statement . . . than to powerful circumstantial evidence." Maj. at 5. Put differently, because the majority has weighed the circumstantial evidence and concluded it is "powerful," the majority forecloses the opportunity for a reasonable adjudicator to reach any other conclusion based on any other evidence in the record beyond what the majority has deemed important. That determination directly contradicts existing precedent. *See Donchev v. Mukasey*, 553 F.3d 1206, 1213 (9th Cir. 2009) ("We are not free to look anew at the testimony and then measure the

4

soundness of the agency's decision by what we would have found. Nor does evidence compel the opposite conclusion just because it would also support a different result." (footnotes omitted)).

Injecting its own conclusions, the majority decides the harm Reyna Sanchez suffered "cannot reasonably be explained" by the other evidence in the record. Maj. at 6. But this reweighing of the evidence is exactly what we are not allowed to do. Instead of deferring to the IJ's determination as adopted by the Agency "as one of potentially many reasonable possibilities," the majority "flips [the substantial evidence] standard on its head" by conducting its own weighing of the facts. *Ming Dai*, 141 S. Ct. at 1678. The sworn statement alone requires us to uphold the Agency's nexus determination, as it is sufficient evidence from which a reasonable adjudicator could conclude as the Agency and IJ did.[3] But there is much more here than simply the sworn statement.

The Agency relied on the IJ's conclusion that Reyna Sanchez had failed to demonstrate the requisite nexus because, after Reyna Sanchez's first arrest, she lived in her own home and then with her aunt in the same town free from government intrusion, she encountered no problem traveling to and from Cuba twice, her family

---

[3] That the IJ found Reyna Sanchez credible does not make any difference as to the statement. Reyna Sanchez may have believed she didn't make the statements reflected in her sworn statement. But her belief, even if genuine, did not require the IJ to find the relevant direct quotes in the sworn statement were fabricated by the Border Patrol agents.

lived nearby and experienced no harm, and, other than one discrete event of holding a sign in public, Reyna Sanchez had provided no evidence of her "anti-government activity."

Like it does with the sworn statement by supplanting its own evaluation, the majority weighs the other facts differently than the Agency did. The majority finds that although Reyna Sanchez was able to freely travel to and from Cuba with no interference from the Cuban government, the police were waiting for Reyna Sanchez upon her return to the country and therefore her free travel does not undermine a finding of nexus. Maj. at 5 n.1.

But the "highly deferential" substantial evidence standard requires that "so long as the record contains contrary evidence of a kind and quality that a reasonable factfinder *could* find sufficient, a reviewing court *may not overturn the agency's factual determination*." *Ming Dai*, 141 S. Ct. at 1677 (emphasis added) (internal quotation marks omitted). While a reviewing court might weigh the evidence differently if reviewing de novo, the only question before us is whether the record contained some evidence that a reasonable fact finder "could find sufficient." *Id.* That evidence was before the Agency and is before us as well.

It is more than "reasonable" for a factfinder to weigh Reyna Sanchez's sworn statement, together with the fact that Reyna Sanchez enjoyed unrestricted travel to

and from Cuba, against alternative *circumstantial* evidence and conclude the beatings Reyna Sanchez endured were, as she explained under oath, "[b]ecause [she] used to sell food without a permit." The existence of competing evidence in the record does not mean the evidence relied on by the IJ was insufficient.

Because there is sufficient evidence from which a reasonable adjudicator could conclude that the central reason for Reyna Sanchez's harm was on account of her unlicensed sale of produce and not her political opinion, I would deny Reyna Sanchez's petition for asylum. I would also deny the petition as to the withholding of removal claim for similar reasons. Given the evidence, particularly Reyna Sanchez's sworn statement, a reasonable factfinder would not be compelled to conclude that Reyna Sanchez's political opinion was "a reason" for her harm. 8 U.S.C. § 1231(b)(3)(C). Thus, I respectfully dissent, in part.